Law Office of Eric Auten
PO Box 2717
Valdez, AK 99686
907-461-7240
auteneric@yahoo.com
MAR 25 2022
SEARHC Legal Department

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
FIRST JUDICIAL DISTRICT AT JUNEAU

| | |
|---|---|
| Gail Marvin,<br>    Plaintiff,<br><br>v.<br><br>McNeil-PPC, Inc.; McNeil Consumer Healthcare; McNeil Consumer Pharmaceuticals Co.; and Johnson & Johnson Consumer, Inc.; Allen Marine Tours, Inc.; Southeast Alaska Regional Health Consortium; and Bradelle Padon, ANP.<br>    Defendants. | 1JU-21-_____ Civ. |

## COMPLAINT

1) Plaintiff Gail Marvin is a natural person and at all relevant times a resident of Juneau, Alaska.

2) This Court has jurisdiction over this matter because of Ms. Marvin's residency and the fact her injuries were primarily incurred in Juneau, Alaska.

3) McNeil-PPC, Inc., is a corporation that was incorporated under the laws of the State of New Jersey with its principal place of business in the State of Pennsylvania, at 7050 Camp Hill Rd., Fort Washington, PA 19034.

4) McNeil Consumer Healthcare is a Division of McNeil-PPC, Inc.

5) McNeil-PPC, Inc. also does business as Defendant McNeil Consumer Pharmaceuticals Co.

1

6) On information and belief, McNeil-PPC, Inc. currently conducts business as Johnson and Johnson Consumer, Inc.

7) On information and belief, Johnson and Johnson Consumer, Inc. is a successor in interest to McNeil-PPC, Inc.

8) Johnson and Johnson Consumer, Inc. is a corporation that is incorporated under the laws of the State of New Jersey with its principal place of business in the State of New Jersey, 199 Grandview Road, Skillman, NJ 08558.

9) The Defendants are or were, at all material times hereto, in the business of designing, manufacturing and marketing drugs called over-the-counter Tylenol brand.

10) At all times alleged herein, the Defendants include and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

11) At all times herein mentioned, each of the Defendants was the agent, servant, partner, predecessors in interest, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture.

12) At all times relevant, the Defendants were engaged in the business of developing, designing, licensing, manufacturing, labeling, distributing, selling, marketing, and/or introducing into interstate commerce throughout the United States, either

2

Case 1:22-cv-00058-JWS   Document 1-1   Filed 05/31/22   Page 2 of 18

Exhibit A
2 of 18

directly or indirectly through third parties, subsidiaries or related entities, various types of acetaminophen products which were sold under the trade name that included the name, Tylenol, whether under such trade names as, for example only, Tylenol Regular Strength, Tylenol Extra Strength, Tylenol Cold, Tylenol Sinus and other products using the Tylenol brand-name. These products may hereinafter be referred to as "Tylenol." All Tylenol products contain the active ingredient "acetaminophen." Acetaminophen is a leading cause of acute liver failure in the United States.

13) In the summer of 2019, Ms. Marvin contracted Norovirus which, among other symptoms, caused her to experience severe headaches and nausea. On her physician's recommendation, she began taking acetaminophen to try to alleviate these symptoms. After taking acetaminophen as per recommended dosages, she noticed that when she tried to get up just to go to the mailbox, walking was extremely painful and her feet were badly swollen. The pain was so bad she would feel like she was near collapsing and fainting.

14) She contacted a close friend and asked him to take her to the emergency room at Bartlett Hospital in Juneau. Blood tests were taken and she was eventually diagnosed with poisoning from acetaminophen, the active ingredient in Tylenol.

15) Her treating physician estimated she had only 8.5 hours to live and ordered an emergency medical evacuation with Angel Flight to the University of Washington ("U.W.") Intensive Care Unit, where she was seen and treated by approximately 27 physicians. Among other issues, she was informed by her physicians that her kidneys had already failed while she was at Bartlett Hospital. She began

experiencing an awful and unfamiliar metallic taste. She couldn't hold food down. She lapsed in and out of consciousness.

16) She spent approximately two weeks in the intensive care unit there and was then transferred to the liver transplant section of U.W. awaiting a liver transplant.

17) She was put on kidney dialysis for ten days and had thirteen physicians attending her. Throughout her stay there, she was unable to even get out of bed without assistance to go to the bathroom. She often noticed her physicians, nurses and other attendants acting frantically and very concerned. She eventually learned that the toxins from the Tylenol had traveled to her brain and were causing her liver, pancreas and kidneys to start shutting down.

18) The potential for acetaminophen-induced liver and kidney damage and failure have been well documented and well known to the Defendants for many years prior to the incident involving Ms. Marvin.

19) The subject Tylenol product taken by Ms. Marvin, which was the direct and proximate cause of her suffering and distress, was designed, manufactured, packaged, labeled, marketed, promoted, and placed into the stream of interstate commerce by the Defendants.

20) As a direct and proximate result of the acts and omissions of the Defendants, and Ms. Marvin's use of Tylenol, she has suffered serious physical injury, life-changing, life-altering pain and suffering, loss of income, loss of opportunity, loss of social relationships, and medical, hospital, and surgical and other expenses related to diagnosis and treatment thereof, for which the Defendants are liable.

4

21) As a direct and proximate result of her use of Tylenol, she has suffered and will continue to suffer pecuniary and other losses.

22) To the extent that the law of another forum is applied to any aspect of the case, Ms. Marvin incorporates by reference that law and make any and all claims that may be available under the law.

23) The Defendants are joint tortfeasors, jointly and severally liable to Ms. Marvin for her injuries.

## COUNT I: STRICT LIABILITY

24) Ms. Marvin incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein. She pleads all Counts of this Complaint and Jury Demand in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles including the law of the her resident State of Alaska.

25) At the time of her injuries, the Defendants' drug, Tylenol, was defective and unreasonably dangerous to foreseeable consumers, including Ms. Marvin.

26) The Tylenol ingested by Ms. Marvin was in the same or substantially similar condition as it was when it left the possession of the Defendants. Ms. Marvin did not materially alter the Tylenol product she ingested.

27) The Defendants are strictly liable for Ms. Marvin's injuries in the following ways:

a. Tylenol, as designed, manufactured, sold and supplied by the Defendants, was defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

b. The Defendants failed to properly market, design, manufacture, distribute, supply and sell Tylenol;

c. The Defendants over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy;

d. The Defendants failed to warn, properly label, and place adequate warnings and instructions on Tylenol;

e. The Defendants failed to adequately test Tylenol;

f. The Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of Tylenol; and,

g. The Defendants failed to market a feasible alternative design that existed that was capable of preventing Ms. Marvin's injuries.

28) The Defendants' actions and omissions were the direct and proximate cause of Ms. Marvin's injuries.

29) The Defendants' conduct, as described above, was extreme and outrageous. The Defendants risked the lives of the consumers and users of their products, including Ms. Marvin, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. The Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. The Defendants' outrageous conduct, which was wanton and willful, warrants an award of punitive damages.

COUNT II: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

30) Ms. Marvin incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

31) At the time the Defendants marketed, distributed and sold Tylenol to Ms. Marvin, the Defendants warranted that Tylenol was merchantable and fit for the ordinary purposes for which it was intended.

32) Members of the consuming public, including consumers such as Ms. Marvin, were intended third-party beneficiaries of the warranty.

33) Tylenol was not merchantable and fit for its ordinary purpose, because it has a propensity to lead to the serious personal injuries described herein.

34) Ms. Marvin reasonably relied on the Defendants' representations that Tylenol was safe and free of defects and was a safe means of reducing pain.

35) The Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Ms. Marvin's injuries.

36) The Defendants' conduct, as described above, was extreme and outrageous. The Defendants risked the lives of the consumers and users of their products, including Ms. Marvin, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. The Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. The Defendants' outrageous conduct warrants an award of punitive damages.

COUNT III: BREACH OF IMPLIED WARRANTY OF FITNESS

FOR A PARTICULAR PURPOSE

37) Ms. Marvin incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

38) The Defendants manufactured, supplied and sold Tylenol with an implied warranty that it was fit for the particular purpose of a safe means of reducing pain.

39) Members of the consuming public, including Ms. Marvin, were the intended third-party beneficiaries of the warranty.

40) Tylenol was not fit for the particular purpose as a safe means of reducing pain without serious risk of personal injury, which risk is much higher than other medications for reducing pain.

41) Ms. Marvin reasonably relied on the Defendants' representations that Tylenol was safe and effective for reducing pain.

42) The Defendants' breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Ms. Marvin's injuries.

43) The Defendants' conduct, as described above, was extreme and outrageous. The Defendants risked the lives of the consumers and users of their products, including Ms. Marvin, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. The Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. The Defendants' outrageous conduct warrants an award of punitive damages.

COUNT IV: NEGLIGENT FAILURE TO WARN

44) Ms. Marvin incorporates by reference each preceding and succeeding paragraph as though set forth fully herein.

45) Before Ms. Marvin ingested Tylenol, and during the period in which she ingested the medication, the Defendants knew or had reason to know that Tylenol was dangerous and created an unreasonable risk of bodily harm to consumers.

46) The Defendants had a duty to exercise reasonable care to warn end users of the dangerous conditions or of the facts that made Tylenol likely to be dangerous.

47) Despite the fact that the Defendants knew or had reason to know that Tylenol was dangerous, the Defendants failed to exercise reasonable care in warning the medical community and consumers, including Ms. Marvin, of the dangerous conditions and facts that made Tylenol likely to be dangerous.

48) The Defendants failed to warn adequately and properly, but instead, over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy.

49) Ms. Marvin's injuries were the direct and proximate result of the Defendants' failure to warn of the dangers of Tylenol.

50) The Defendants' conduct, as described above, was extreme and outrageous. The Defendants risked the lives of consumers and users of their products, including Ms. Marvin, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. The Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. The Defendants' outrageous conduct warrants an award of punitive damages.

COUNT V: NEGLIGENT DESIGN DEFECT

51) Ms. Marvin incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

52) The Defendants are the manufacturer, seller, distributor, marketer, and supplier of Tylenol which was negligently designed.

53) The Defendants failed to exercise reasonable care in designing, developing, formulating, manufacturing, inspecting, testing, packaging, selling, distributing, labeling, marketing, and promoting Tylenol which was defective and presented an unreasonable risk of harm to consumers, such as Ms. Marvin.

54) As a result, Tylenol contains defects in its design which renders it dangerous to consumers, such as Ms. Marvin, when used as intended or as reasonably foreseeable to the Defendants.

55) The design defects render Tylenol more dangerous than other pain relievers and cause an unreasonable increased risk of injury including but not limited to acute liver failure.

56) Ms. Marvin ingested Tylenol in a reasonably foreseeable manner, and substantially as intended by the Defendants.

57) Tylenol was not materially altered or modified after manufactured by the Defendants and before ingested by Ms. Marvin.

58) The design defects directly rendered Tylenol defective and were the direct and proximate result of the Defendants' negligence and failure to use reasonable care in designing, testing, and manufacturing Tylenol.

59) As a direct and proximate result of the Defendants' negligent design of Tylenol, Ms. Marvin suffered injury.

10

Case 1:22-cv-00058-JWS   Document 1-1   Filed 05/31/22   Page 10 of 18   Exhibit A
10 of 18

60) Despite the fact that the Defendants knew or should have known that Tylenol was defectively designed, contained design defects, and caused an unreasonable risk of harm, the Defendants designed, manufactured, sold, and marketed Tylenol to consumers, including the medical community and Ms. Marvin, and failed to warn consumers, the medical community, and Ms. Marvin of the increased risk of harm relative to other medications for relieving pain.

61) The Defendants' conduct was extreme and outrageous. The Defendants risked the lives of consumers and users of their products, including Ms. Marvin, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. The Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting consuming public. The Defendants' outrageous conduct warrants an award of punitive damages.

## COUNT VI: FRAUD

62) Ms. Marvin incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

63) Prior to Ms. Marvin's ingestion of Tylenol and during the period in which she actually ingested Tylenol, the Defendants fraudulently suppressed material information regarding the safety and efficacy of Tylenol, including information regarding potential liver and/or kidney failure. Furthermore, the Defendants fraudulently concealed the safety information about the use of acetaminophen. As described above, acetaminophen has several well-known and serious side-effects that are not seen in other forms of pain relievers. Ms. Marvin believes that the fraudulent misrepresentation described herein was intentional to keep the sales volume of Tylenol.

11

64) The Defendants fraudulently concealed the safety issues associated with Tylenol in order to induce physicians to recommend its use to patients, including Ms. Marvin.

65) The Defendants concealed the fact that Tylenol was not safe. The Defendants were under a duty to communicate this information to Ms. Marvin, physicians, the Food and Drug Agency ("FDA"), the healthcare community, and the general public in such a manner that they could appreciate the risks associated with using Tylenol.

66) The Defendants, at all times relevant hereto, withheld information from the FDA which they were required to report. Ms. Marvin and prescribing physicians relied upon the Defendants' outrageous untruths regarding the safety of Tylenol.

67) Ms. Marvin and physicians were not provided with the necessary information by the Defendants, to provide an adequate warning to the Ms. Marvin; instead the Defendants over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy.

68) Tylenol was improperly marketed to Ms. Marvin and physicians as the Defendants did not provide proper instructions about how to use the medication and did not adequately warn about the medications' risks; instead the Defendants over-promoted the Tylenol products, including but not limited to over-promotion of its safety and efficacy.

69) As a direct and proximate result of the Defendants' malicious and intentional concealment of material life-altering information from Ms. Marvin and her physicians, the Defendants caused or contributed to her injuries.

70) It is unconscionable and outrageous that the Defendants would risk the lives of

12

consumers, including Ms. Marvin. Despite this knowledge, the Defendants made conscious decisions not to redesign, label, warn or inform the unsuspecting consuming public about the dangers associated with the use of Tylenol. The Defendants' outrageous conduct rises to the level necessary that Ms. Marvin should be awarded punitive damages to deter Defendants from this type of outrageous conduct in the future and to discourage Defendants from placing profits above the safety of patients in the United States of America.

71) The Defendants widely advertised and promoted Tylenol as a safe and effective medication and/or as a safe and effective means of reducing pain.

72) The Defendants had a duty to disclose material information about serious side-effects to consumers such as Ms. Marvin.

73) Additionally, by virtue of the Defendants' partial disclosures about the medication, in which the Defendants touted Tylenol as a safe and effective medication, Defendants had a duty to disclose all facts about the risks associated with use of the medication, including the risks described in this Complaint. The Defendants intentionally failed to disclose this information for the purpose of inducing consumers, such as Ms. Marvin, to purchase the Defendants' dangerous product.

74) Had Ms. Marvin been aware of the hazards associated with Tylenol, she would not have ingested the product that led proximately to her adverse health effects.

75) The Defendants' advertisements regarding Tylenol made material misrepresentations to the effect that Tylenol was a safe and effective medication, which misrepresentations the Defendants knew to be false, for the purpose of fraudulently

13

inducing consumers, such as Ms. Marvin, to purchase such product. She relied on these material misrepresentations when deciding to purchase and ingest Tylenol.

76) Upon information and belief, Ms. Marvin avers that the Defendants actively and fraudulently concealed information in the Defendants' exclusive possession regarding the hazards associated with Tylenol with the purpose of preventing consumers such as her from discovering these hazards.

## COUNT VII: VIOLATION OF CONSUMER PROTECTION LAWS

77) Ms. Marvin incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

78) Ms. Marvin purchased and used Tylenol primarily for personal use and thereby suffered ascertainable losses as a result of the Defendants' actions in violation of the consumer protection laws.

79) Unfair methods of competition or deceptive acts or practices that were proscribed by law, including the following:

    a) Representing that goods or services have characteristics, ingredients, user benefits, or quantities that they do not have;

    b) Advertising goods or services with the intent not to sell them as advertised;

    c) Over-promotion of the Tylenol products, including but not limited to over-promotion of its safety and efficacy; and

    d) Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

80) The Defendants violated consumer protection laws through their use of false and

misleading misrepresentations or omissions of material fact relating to the safety of Tylenol.

81) The Defendants uniformly communicated the purported benefits of Tylenol while failing to disclose the serious and dangerous side-effects related to the use of Tylenol and of the true state of Tylenol's regulatory status, its safety, its efficacy, and its usefulness. The Defendants made these representations to physicians, the medical community at large, and to patients and consumers such as Ms. Marvin in the marketing and advertising campaign described herein. The Defendants' conduct in connection with Tylenol was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding, because the Defendants misleadingly, falsely and or deceptively misrepresented and omitted numerous material facts regarding, among other things, the utility, benefits, costs, safety, efficacy and advantages of Tylenol.

82) As a result of these violations of consumer protection laws, Ms. Marvin has incurred serious physical injury, pain, suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical, hospital and surgical expenses and other expense related to the diagnosis and treatment thereof, for which the Defendants are liable.

## COUNT VIII: NEGLIGENCE (SEARHC)

83) Ms. Marvin incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein. For this Count VIII, Ms. Marvin also pleads in the alternative.

84) By its own description, the Southeast Alaska Regional Health Consortium ("SEARHC") is a non-profit medical, dental, vision and mental health organization

serving the health interests of the residents of Southeast Alaska. Its registered physical and mailing address for service is 3100 Channel Drive, Suite 300, Juneau, Alaska 99801. Its registered agent is Michael Douglas. Bradelle Padon is a licensed Nurse Practitioner employed by SEARHC. She is a natural person, and on information and belief, she is a resident of Juneau, Alaska.

85) In the summer of 2019 when Ms. Marvin's symptoms from the Norovirus became unbearable, she sought medical treatment at SEARHC. Among other recommendations, Ms. Padon, her treating physician(s) and/or other health care provider(s)[1] there prescribed acetaminophen, which was provided to her directly by SEARHC. She was not adequately warned of the above-described dangers of taking Tylenol by anyone at SEARHC. SEARHC knew or should have known of these dangers, and owed a duty of care to warn and advise Ms. Marvin of the same. SEARHC's breach of duty and care was a material cause of the injuries and suffering Ms. Marvin experienced.

## COUNT IX: NEGLIGENCE (ALLEN MARINE TOURS)

86) Ms. Marvin incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein. For this Count VIII, Ms. Marvin also pleads in the alternative.

87) During the summer of 2019, Ms. Marvin was employed by Allen Marine Tours in Juneau, Alaska. By its own description, Allen Marine Tours is a family-owned business, and one of the oldest tour companies in Alaska. They currently operate vessels from the ports of Juneau, Ketchikan and Sitka, Alaska. They also operate one or more lodges. Their registered agent for service is David Allen, whose mailing address is PO Box 1049,

---

[1] The organization and individuals are collectively referred to here as "SEARHC."

16

Case 1:22-cv-00058-JWS   Document 1-1   Filed 05/31/22   Page 16 of 18

Exhibit A
16 of 18

Sitka, Alaska 99835. Their registered physical address is 1512 Sawmill Creek Road, Sitka, Alaska 99835.

88) On a day when Ms. Marvin was working for Allen Marine Tours, a passenger from a Princess Cruise Lines vessel was diagnosed with Norovirus and departed the vessel to join one of Allen Marine Tours excursions and/or visit one of its lodges. Norovirus is a very contagious virus. It can be transferred from an infected person, from contaminated food or water, or by touching contaminated surfaces. The virus causes a person's stomach or intestines or both to get inflamed (acute gastroenteritis). This leads you to stomach pain, nausea, and diarrhea and vomiting.

89) According to the CDC's Vessel Sanitation Program, this was documented and a "manifest" issued. Allen Marine Tours knew or reasonably should have known that the passenger was infected. Allen Marine Tours had a duty of reasonable care to protect its workers from this, yet failed to exercise such care. As a result, approximately twelve of its employees contracted Norovirus from this incident, one of whom was Ms. Marvin. Allen Marine Tours' breach of duty was a proximate and material cause for Ms. Marvin's injuries, pain and suffering from contracting Norovirus, as well as the injuries suffered later from taking acetaminophen to alleviate symptoms from Norovirus.

PRAYER FOR RELIEF

WHEREFORE, Ms. Marvin demands judgment against all of the above-named Defendants, and each of them, individually, jointly, severally and in the alternative, and requests compensatory damages, punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just. Specifically:

1. Compensatory damages in excess of the jurisdictional amount, including but not limited to, non-economic damages in excess of $1,000,000.00.

2. Medical expenses and other economic damages in an amount to be determined at trial of this action;

3. Pain and suffering;

4. Non-economic damages for an increased risk of future complications as a direct result of her injuries;

5. Punitive damages;

6. Prejudgment interest at the highest lawful rate allowed by law;

7. Interest on the judgment at the highest legal rate from the date of judgment until collected;

8. Attorneys' fees, expenses, and costs of this action; and,

9. Such further relief as this Court deems necessary, just and proper.

## JURY DEMAND

Ms. Marvin hereby demands a trial by jury on all issues so triable.

Date: August 4, 2021

_____
Eric Auten (Alaska Bar #9712098)